UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRANDON D. COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>WOODS, *et al.,*<br><br>Defendants. | Case No. 23-12570<br>Honorable Linda V. Parker<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 54 & 56)**

## I. Introduction

Plaintiff Brandon D. Collins, a prisoner of the Michigan Department of Corrections (MDOC), sues under 42 U.S.C. § 1983, alleging that MDOC officials violated his constitutional rights by interfering with his use of a kosher-adherent microwave oven in April 2023. The Honorable Linda V. Parker referred the matter to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 8. Collins and the seven remaining defendants cross-move for summary judgment under Federal Rule of Civil Procedure 56. ECF No. 54; ECF No. 56. The Court **RECOMMENDS** that

Collins's motion be **DENIED** and that defendants' motion be **GRANTED IN PART AND DENIED IN PART.**

## II. Background

The events at issue occurred during April 2023, while Collins was confined at the Thumb Correctional Facility in Lapeer, Michigan. ECF No. 36, PageID.444. Collins is a black "Hebrew Israelite Jew," which the MDOC recognizes as Jewish. *Id.*, PageID.447-448. Collins was thus approved to participate in Passover during April 2023. *Id.* "During Passover, April 5, through 13, 2023, Collins would receive special Kosher meals which would be delivered to him" in the Franklin housing unit "or picked up by him from the facility's dining hall." *Id.,* PageID.448. Two Orthodox Jews, Berryman and Boussum, were also housed in the Franklin unit and participated Passover in April 2023. *Id.*

The Franklin unit had several regular microwaves for prisoner use. *Id.*, PageID.449. But before Passover in 2023, the unit received a "brand new Kosher prepared microwave, so that Jewish prisoners can use it in order to warm Kosher meals when they are in a cold state." *Id.* That "kosher microwave" was placed in the unit's "observation cell to be under 'lock-and-key' to prevent non-Jewish prisoners" from using it and "contaminating it." *Id.*, PageID.450. Collins alleges that non-party housing

unit counselor Hairston, "with the Knowledge and direct approval of his superior Defendant R.U.M. Love," made the arrangement for the kosher microwave. *Id.*, PageID.449.

Collins alleges that Defendant Wells gave him permission to use the kosher microwave on April 8. *Id.* Inmate Berryman objected, telling Wells that "Collins is a Hebrew Israelite"; that as Orthodox Jews, Berryman and Boussum did not recognize Hebrews; that there is no such thing as a black Jew; and that Collins would "contaminate our microwave." *Id*. Wells then ordered Collins him to take his food out of the kosher microwave. *Id.*, PageID.451.

Seven defendants remain in this case: 1) Vanessa Love; 2) Jonathan Denison; 3) William Woods; 4) Michael Jenkins; 5) Ryan Tubbs; 6) Dominic Wells; and 7) Della Rukenbrod. In his amended complaint, Collins asserts these claims against them: "First Amendment Establishment Clause Violation" (Count I); "First Amendment Free Exercise Clause Violation" (Count II); "Fourteenth Amendment Equal Protection & Substantive Due Process Clause Violations For Religious Discrimination" (Counts III & IV); and "Fourteenth Amendment Equal Protection & Substantive Due Process Clause Violations For Racial Discrimination" (Counts V & VI). ECF No. 36.

The parties agree that non-party Hairston put the kosher microwave in the locked observation cell in the Franklin unit during Passover, and placed a sign on it that stated, "Only For Heating Kosher meals For Passover 4/5/23-4/13/23 PC Hairston." ECF No. 56, PageID.709. But the parties present evidence supporting different versions of the events that followed.

Woods, Wells, and Rukenbrod worked in the unit during Passover and submitted affidavits stating that they did not place the kosher microwave in the unit or know the reasons for its placement. ECF No. 54-3, PageID.652; ECF No. 54-9, PageID.681; ECF No. 54-8, PageID.676.

Defendants state in their affidavits that, after Collins was allowed to use the microwave on April 8, Berryman and Boussum objected, telling Woods and Wells that they were the only ones that could use it. ECF No. 54-3, PageID.652; ECF No. 54-9, PageID.681. Because Woods lacked knowledge about the religious issues involved, he asked the Chaplain for clarification:

> I am writing to bring to your attention a concern that was raised to me regarding the use of the Passover microwave in Franklin A Unit. Today, prisoner Collins…a Hebrew Israelite, used the microwave and prisoner Berryman…, a Jew, expressed concern that using this microwave violates his religious practice. Prisoner Boussum…also expressed the same concern about prisoner Collins using the microwave.

> I would appreciate it if you could address this issue with the appropriate parties.

ECF No. 54-3, PageID.656. While awaiting clarification, Woods removed the sign from the microwave, allowing no one to use it. *Id*.; ECF No. 54-9, PageID.681. Wells states that neither Berryman or Boussum ever mentioned anything about "Black Jews" or race to him. ECF No. 54-9, PageID.681.

Rukenbrod states that on April 9, Collins asked to use the microwave. ECF No. 54-8, PageID.676. Because she did not know who was allowed to use it, she sought clarification from her shift commanders and allowed no one to use it in the meantime. *Id.* Later that day, Denison clarified for Rukenbrod "that there is no official 'kosher meal microwave.'" *Id.* Denison denies authorizing or knowing about a designated kosher microwave and states that administration advised him there was no official kosher meal microwave." ECF No. 54-4, PageID.659.

In the decision denying Collins's grievance about the microwave, the MDOC said that Hairston created the sign designating the microwave as a "kosher" microwave, but that he was not authorized to do so. ECF No. 58, PageID.765. The decision said, "Housing will not have a microwave designated for kosher warm ups" and "[t]here should have never been a microwave designated for kosher meals." *Id.*

Collins testified that, after he used the kosher microwave on April 8, Rukenbrod told him he could not use it because it was for Berryman and Boussum, "Jews only." ECF No. 54-2, PageID.630. Collins said that, while he was speaking with Rukenbrod, Berryman was close by and blurted out that "there were no such thing as Black Jews." *Id.*, PageID.634. And Collins testified that Wells told him on April 9 that the microwave was only for Berryman and Boussum. *Id.*, PageID.640.

Collins also submits affidavits and declarations from several inmates. Charles Holmes's declaration states that he is a block representative. ECF No. 58, PageID.770. Holmes states that, at about 6:00 p.m. on April 8, Collins complained to him about being denied the use of the kosher microwave while Berryman and Boussum were allowed to use it. *Id.*, PageID.771. Between April 5 to 13, 2023, Holmes "witnessed C/O Wells on multiple occasions give inmates Berry and Boussum access to the Kosher Passover Microwave accommodation after Collins told me he was denied this same accommodation by Wells." ECF No. 58, PageID.771. Inmate D'Andre Lane said by affidavit that, on April 9, he "over-heard the conversation between Collins and C/O Wells at the Officers desk, and Wells telling Collins that he can't use that Kosher Passover microwave, that

microwave accommodation is for Berryman and Boussum because they are Jewish." ECF No. 58, PageID.769.

By affidavit, inmate Willie Robinson-Bey stated that he witnessed Rukenbrod tell Collins on April 9 that the "Kosher Passover Microwave was for Jews only." ECF No. 58, PageID.767. Robinson-Bey witnessed Boussum blurt out that there is "no such thing as a Black Jew" while Collins and Rukenbrod were talking. *Id*. And Robinson-Bey heard Rukenbrod tell Collins he could not use the microwave and that the "Passover microwave accommodation was for Berryman and Boussum because their [sic] Jewish." *Id.*

## III. Analysis

### A.

Defendants argue that summary judgment should be granted in their favor on qualified immunity grounds.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light

most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. The court can address these two prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celeotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id*. at 324. When evaluating a summary judgment motion, courts view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When considering cross-motions, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp*., 245 F.3d 587, 592 (6th Cir. 2001).

**B.**

When a plaintiff moves for summary judgment on a claim to which he "bears the burden of proof, [he] must lay out the elements of the claim, cite the facts which [he] believes satisfies these elements, and demonstrate why the record [evidence] is so one-sided as to rule out the prospect of finding in favor of the non-movants on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see also Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'") (cleaned up); *United States v. Feldman*, 439 F. Supp. 3d 946, 951 (E.D. Mich. 2020) (a plaintiff moving for summary judgment must do more than "identify holes in the non-moving party's case"

and must show why the record evidence "is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim").

Collins has not shown that he is entitled to summary judgment. He does not lay out the essential elements of his claims or present any defendant-specific arguments about how he can establish liability for any of his claims. His motion should be denied.

**C.**

To succeed on a § 1983 claim, a plaintiff must show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action). Proximity to the wrongdoer does not convey responsibility. *Pineda*, 977 F.3d at 490. A plaintiff must show with particularity what each defendant did to violate the asserted constitutional right. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Defendants Love, Jenkins, Tubbs, and Denison claim that they are entitled to summary judgment on Collins's claims because he cannot show

their personal involvement. ECF No. 54, PageID.592-597. The Court agrees.

**1.**

Collins alleges that, on one day when the microwave was being discussed, "Hundley stated that Defendant Jenkins stated he would come to Franklin Unit to resolve the issue; but, he never showed up." ECF No. 36, PageID.455. During his deposition, Collins confirmed that Jenkins never showed up on that date and that he "never spoke to Lieutenant Jenkins." ECF No. 54-2, PageID.637. Thus, Jenkins is entitled to summary judgment.

**2.**

Collins alleges that, when he asked to speak to a supervisor about the microwave issue on April 9, Rukenbrod called Tubbs by phone. ECF No. 36, PageID.452. Collins claims that Tubbs "sided with" Wells and Rukenbrod and told Rukenbrod that the "Kosher meals microwave was for Jews only." *Id.*, PageID.452-453. But Collins testified that Tubbs did not come to the unit and he did not hear what Tubbs said by phone. ECF No. 54-2, PageID.630-631. Collins never showed Tubbs his religious paperwork nor speak to Tubbs about the microwave issue. *Id.*, PageID.107-108. Thus, Tubbs is entitled to summary judgment.

**3.**

Collins alleges that he asked to speak with Denison about the microwave issue on April 9. *Id*., PageID.452-453. Denison then came to speak with Collins, and Collins presented paperwork allowing him to receive kosher meals during Passover. *Id.* at PageID.453. Denison then said "that he could use any microwave in the Unit if the Plaintiff religious exercise required him to." *Id*., PageID.453. During his deposition, Collins confirmed that Denison told him he could use any microwave in the unit that he wanted to use. ECF N. 54-2, PageID.632. And Collins testified that he understood Denison's statement to him to mean that he "could use any microwave in the unit, including the kosher microwave." *Id*., PageID.633.

Collins again confirms in his response brief that Denison told him "he could use any microwave in the unit if his religious exercise required him to." ECF No. 58, PageID.741. But Collins tries to salvage his claim against Denison by asserting that Jenison must have "never meant" what he told him. *Id.* Such unsupported speculation does not suffice. Denison is entitled to summary judgment.

**4.**

Collins does not allege that he asked Love for permission to use the microwave or discussed it with her at all on either April 8 or 9. ECF No. 36,

PageID.453-455. He merely alleges that he tried to talk to Love about the microwave issue on April 10, and that Love said "she was busy" and did not speak to him about the issue. *Id*., PageID.455.

And although Collins alleges in his complaint that Love approved Hairston approved of the kosher microwave for the unit (ECF No. 36, PageID.449), he submits no evidence in support. Thus, Love is entitled to summary judgment.

That leaves Collins's claims against Woods, Wells, and Rukenbrod to be addressed.

**D.**

In seeking summary judgment, defendants make two arguments addressing Collins's Establishment Clause claim. First, they argue that Collins "cannot show that any Defendant coerced him to support or attempted to establish a state religion in any way." ECF No. 54, PageID.601. But that is not the kind of claim that Collins makes.

Collins claims that defendants violated his rights under the First Amendment's Establishment Clause when they "chose to respect one sect (Orthodox Jewish sect), and give preferential treatment to them, over [his] religious sect (Hebrew Israelite Jewish sect)." ECF No. 36, PageID.442.

Collins claims that defendants denied him the use of a kosher microwave while allowing two Orthodox Jewish prisoners to use it.

The Establishment Clause of the First Amendment prohibits the enactment of any law "respecting an establishment of religion." U.S. Const. amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "And the same protection extends to different sects within a religion." *Maye v. Klee*, 915 F.3d 1076, 1984 (6th Cir. 2019) (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).

Defendants' second argument is that Collins's claim fails because he "makes no allegation that Defendants acted in any official capacity to extend preferences of one Jewish sect over another" and that Collins's own exhibit reflects that the prison's official position is "there is no designated 'Passover' microwave.'" ECF No. 54, PageID.602. Defendants argue that because "there was no official preference of one Jewish sect over another," Collins's establishment clause claim fails. *Id.*

But defendants do not develop this argument or direct the Court to any cases in which such an argument has prevailed. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving

the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (cleaned up).

And as the Sixth Circuit noted in *Maye*, "[t]he Supreme Court has found that an official who 'confers [a] privileged status on any particular religious sect' or 'singles out [a] bona fide faith for disadvantageous treatment' violates the Establishment Clause." *Id*. (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005)). That is the conduct that Collins claims here. And he submits evidence that: 1) he was approved by the MDOC to participate in Passover and receive kosher meals; 2) a microwave marked only for kosher meals during Passover was placed in his unit; 3) he sought to use it based on his religion and was allowed to do so at first; 4) but after two Orthodox Jews (Berryman and Boussum) complained about Collins using the microwave, he was banned from using it; and 5) he was told the microwave was for Berryman and Boussum, "Jews only."

Thus, the remaining defendants are not entitled to summary judgment on Collins's Establishment Clause claim.

**E.**

Collins claims that defendants violated his rights under the Free Exercise Clause of the First Amendment by prohibiting him from using the

kosher microwave to reheat his Passover meals. ECF No. 36, PageID.461-462. The Free Exercise Clause states, "Congress shall make no law prohibiting the free exercise [of religion]." U.S. Const. amend. I (cleaned up). Prisoners retain free exercise rights, but those rights must be balanced against the prison's need to maintain security and order. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987).

"In any free exercise claim, the first question is whether the belief or practice asserted is religious in the plaintiff's own scheme of things and is sincerely held." *Miles v. Mich. Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *2 (6th Cir. Aug. 20, 2020) (quoting *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019)) (cleaned up). Second, the Court must decide "whether the challenged practice of the prison officials infringes on the religious belief." *Kent v. Johnson*, 821 F.2d 1220, 1225 (6th Cir. 1987). A defendant does not infringe on a prisoner's free exercise unless he "places a substantial burden on the observation of a central religious belief or practice." *Evans v. Washington*, No. 1:19-cv-953, 2019 WL 6974735, at *5 (W.D. Mich. Dec. 20, 2019) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)) (cleaned up).

"The 'substantial burden' hurdle is high"; the plaintiff must show that the defendant "place[d] more than an inconvenience on religious exercise."

*Living Water Church of God v. Charter Twp. of Meridian,* 258 F. App'x 729, 734, 739 (6th Cir. 2007) (cleaned up). Government action that merely makes religious exercise more difficult does not suffice. *Id.* Rather, a substantial burden arises when that action pressured the plaintiff to "modify his behavior and to violate his beliefs." *Id*. at 734 (cleaned up).

It is undisputed that Collins requested, and was provided, kosher meals during Passover in 2023. Collins does not claim that any of the meals provided to him violated his religious dietary restrictions. He claims only that he could not use a "kosher microwave" to reheat his Passover meals on two dates during Passover in 2023. Collins testified that when he wanted to use the microwave on April 8, his meal was "kind of cold" and "kind of like lukewarm-ish." ECF No. 54-2, PageID.628. But Collins testified that he ate all his kosher meals, even the one that was lukewarm. *Id*., PageID.643.

The Sixth Circuit has held that "prison administrators must provide an adequate diet without violating the inmates' religious dietary restrictions." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). "For the inmate, this is essentially a constitutional right not to eat the offending food item[s]." *Id.* If the modified diet provided to the prisoner "is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Id*. And

"isolated acts or omissions" "do not constitute a substantial burden on religious freedom." *Mubashshir v. Moore*, No. 3:10-cv-2802, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (collecting cases); *Gill v. Coyne*, No. 3:18-Cv-00631-CHL, 2021 WL 4811300, at *11 (W.D. Ky. Oct. 14, 2021) (collecting cases).

Collins presents no evidence to show that his kosher meals did not meet his dietary needs or impaired his health. Thus, he has not shown defendants substantially burdened his free exercise of religion. *Alexander*, 31 F. App'x at 179 (inmate stated no free exercise claim when he was served a sandwich with grape jelly on a few dates even though he requested a grape-free diet for religious reasons); *Gill v. Coyne*, 2021 WL 4811300, at *11 (inmate's free exercise claim based on receiving his kosher meals "hours late, ice cold, and mixed and scrambled all together failed as a matter of law because he presented no evidence that the meals did not meet his dietary needs); *Jaami v. Compton*, No. 98-5055, 1999 WL 455374, at *1 (6th Cir. June 23, 1999) (affirming district court's dismissal, as frivolous, of claim that defendants served the plaintiffs cold breakfast during the Muslim holiday of Ramadan).

Thus, summary judgment of Collins's free exercise claims should be granted.

**F.**

The next addresses Collins's claim under the Equal Protection Clause of the Fourteenth Amendment, which prohibits states from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "The Clause embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Collins is black and is a Hebrew Israelite Jew. He claims that defendants' refusal to allow him to use the kosher microwave during Passover, while permitting the two white Orthodox Jewish inmates who complained about him using it and said there is no such thing as a "black Jew," to use it, violated his rights under the Equal Protection Clause.

Defendants claim that Collins's equal protection claims fail because his "allegation of discriminatory purpose" is conclusory. ECF No. 54, PageID.604. Defendants then suggest that there can be no discriminatory purpose because they stopped allowing all inmates, including Berryman and Boussum, from using the microwave once the dispute about the microwave arose. *Id.*, PageID.604-605. Defendants rely on their own affidavits and declarations. *Id*. These arguments ignore the evidence that Collins has presented in support of his claims.

As noted, Collins testified Rukenbrod told him he could not use it because it was for Berryman and Boussum, "Jews only." ECF No. 54-2, PageID.630. Collins testified that Rukenbrod was present when Berryman blurted out that "there were no such thing as Black Jews." *Id.*, PageID.634. And Collins testified that Wells told him that the microwave was only "for them" (Berryman and Boussum). *Id.*, PageID.640. As discussed, affidavits from three other inmates corroborated Collins's testimony. ECF No. 58, PageID.767-771.

Thus, the remaining defendants have not shown that they are entitled to summary judgment on Collins's equal protection claims.

**G.**

Defendants argue that Collins's Fourteenth Amendment substantive due process count, based on allegations of racial and religious discrimination, fails because the First Amendment and the Equal Protection Clause are the explicit source of his claims. ECF No. 54, PageID.607. The Court agrees.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,*

510 U.S. 266, 269 (1994) (cleaned up). Thus, when, as here, protections exist under another constitutional amendment, a Fourteenth Amendment substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 913 (6th Cir. 2013).

## IV. Conclusion

The Court **RECOMMENDS** that Collins's summary judgment motion (ECF No. 56) be **DENIED.** The Court **RECOMMENDS** that defendants' summary judgment motion (ECF No. 54) be **GRANTED IN PART** and that: 1) summary judgment be entered in favor of Love, Jenkins, Tubbs, and Denison as to all claims; and 2) summary judgment be entered in favor of Woods, Wills, and Rukenbrod as to Collins's Free Exercise Clause claims and his substantive due process claims. The motion should be denied in all other respects. If these recommendations are adopted, the only remaining claims will be Collins's Establishment Clause and equal protection claims against Woods, Wills, and Rukenbrod.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 24, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager